407 So.2d 693 (1981)
STATE of Louisiana
v.
Calvin Ray KIMBLE.
No. 81-KA-1153.
Supreme Court of Louisiana.
December 14, 1981.
*695 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, William R. Weatherford, Asst. Dist. Attys., for plaintiff-appellee.
M. Michele Fournet and David Randall Buckley, Baton Rouge, of Office of the Public Defender, for defendant-appellant.
GULOTTA, Justice ad hoc.[*]
Defendant, charged with second-degree murder, was convicted by a twelve man jury of manslaughter, a violation of LSA-R.S. 14:31, and was sentenced to serve a term not to exceed 21 years. He now appeals his conviction and sentence on the basis of ten assignments of error, seven of which we now consider.[1]
Evidence concerning the stabbing death of the victim, Eddie Gremillion, on October 15, 1979 was conflicting. According to a prosecution witness, John Haney, he and defendant were discussing a purchase of marijuana in Baton Rouge on October 15, 1979, when Gremillion approached them and offered to help them buy a bag. Haney testified that after an exchange of words between defendant and Gremillion, the victim handed defendant his pocket knife and started running. Defendant chased him with the knife and, from a distance of about 50 yards, Haney saw defendant catch up with Gremillion and both men fall to the ground. He stated that Gremillion then jumped a fence and climbed up a "slump" before falling backward into a canal.
Defendant, who testified on his own behalf at trial, stated that Gremillion had given Haney the knife to hold until Gremillion returned with a bag of marijuana. As the victim started to walk away, defendant told Haney that he did not trust Gremillion with their money and that they should give him his knife back and get a refund. According to defendant, Haney thereupon gave defendant the knife and he called out to Gremillion to wait. When Gremillion started to run away, defendant chased and caught him and threw his knife on the ground. After Gremillion threw the money down, defendant testified that he started "trotting back" toward Haney, but saw Gremillion pull the knife out and run toward him. According to defendant, Gremillion jumped on him and they commenced to fight. Defendant stated that he took the knife from Gremillion and stabbed him with it only to protect himself.

*696 INSPECTION OF POLICE REPORT (ASSIGNMENTS OF ERROR NOS. 1 & 3)
By these assignments of error, defendant contends the trial court erred in refusing to require production of the entire police report to defense counsel for use during cross examination of state witnesses who had relied on the report both at the trial and at a hearing on a motion to suppress. He contends the trial court's rulings on his request for inspection denied defendant his constitutional right of confrontation.
At trial, Detective Greg Phares of the East Baton Rouge Police Department, while testifying, referred to and used a police report to refresh his memory concerning the distances and areas where blood was found on or near the victim's body. This witness read off the distances from the report. When the State tendered him as a witness, defense counsel moved that the entire police report be produced for purposes of cross-examination, but the trial judge, over defendant's objection, ordered the State to produce only that portion of the report covering distance, which was relevant to Phares' testimony under direct examination.
Police reports are confidential and generally the State may not be compelled to produce them for inspection. State v. Franks, 363 So.2d 518 (La.1978); State v. Banks, 341 So.2d 394 (La.1976). It is well settled however, that when an officer's testimony at trial is from his report rather than his memory, the trial judge should require production of the report for defense inspection. State v. Valentine, 375 So.2d 1378 (La.1979); State v. Franks, supra; State v. Perkins, 310 So.2d 591 (La.1975); State v. Tharp, 284 So.2d 536 (La.1973). In State v. Franks, supra, this court held that the same rule should follow where a witness has referred to his reports or notes with him on the stand, even though presumably only to refresh his memory while testifying. See Rule 612, Federal Rules of Evidence; 3 Wigmore Evidence § 762; McCormick, Evidence (2d Ed. 1972) § 9; 21A Am.Jur.2d Criminal Law, §§ 725, 961.
We conclude, therefore, the trial court erred in holding the state may satisfy its responsibility of disclosure by revealing only those portions of the police report relevant to the direct examination, instead of the entire report.
Nevertheless, we conclude that the trial court's error in failing to order disclosure of the entire report was harmless and does not constitute grounds for reversal. At trial, the defendant admitted to the stabbing of the victim, but urged that he did so in self-defense. The State's eye-witness to the stabbing refuted the defendant's testimony. It therefore appears that the ultimate issue for the jury was whether to accept the defendant's or the State's version of the stabbing. Because Officer Phares' testimony was limited to establishing distances and the location of the body and the blood, not relevant to the self-defense issue, the trial court's error was harmless when considered in the context of the entire case. Although defendant argues that the distance issue was crucial to the State's eyewitness' ability to see the stabbing, defendant was permitted to see that portion of the report dealing with the crime scene. Under the circumstances, we conclude that there exists no "reasonable possibility" that the trial court's failure to afford the defendant the opportunity to inspect the entire report contributed to his conviction. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Defendant also argues that the trial court erred in refusing to allow him to inspect and use for cross-examination the entire police report reviewed by two officers before testifying at a hearing on a motion to suppress evidence. At that hearing, Officer Phares stated that he had recalled the defendant's address and time of his arrest because he had gone over his report prior to taking the stand. Defense counsel's request for the production of the entire report for use at cross-examination was denied, the prosecutor responding that he would only furnish that part of the report concerning the witness' answer to questions on direct examination.
*697 Also, at a hearing on the motion to suppress, a second police officer, Sergeant Alford, testified regarding the date and hour of arrest and stated that he had earlier (before testifying on the stand) refreshed his memory concerning the exact time of arrest by referring to a report. Again, the trial court denied defendant's request for the entire report. Defendant now argues that the credibility of the police officers' testimony was crucial to the defense and the denial of use of the entire report for cross-examination constituted reversible error.
Although a defendant is entitled to examine the report or memorandum of a witness who refreshes his memory while testifying, a denial of a motion to produce is not error when a witness testifies from his memory, even though refreshed by reading over his report outside the courtroom prior to trial. State v. Lane, 302 So.2d 880 (La. 1974). Since both officers testified that they had gone over the report at some time before taking the witness stand at the hearing on the motion to suppress, we find no error in the trial court's denial of defendant's motion to produce the entire report.

BREACH OF SEQUESTRATION ORDER (ASSIGNMENT OF ERROR NO. 4)
Defendant further argues that the trial court erred in allowing a witness to testify in violation of a sequestration order. Following the testimony of three witnesses, Haney, the State's key witness, was called to testify. After the prosecutor informed the Court that the witness was waiting downstairs, apparently in the District Attorney's office, defense counsel requested an opportunity to determine whether Haney had violated the sequestration order.
On questioning by defense counsel, Haney testified that while waiting in the District Attorney's office he had talked about the case with the District Attorney's investigator, Leonard Spears. The trial judge overruled defendant's objection to Haney's testimony. It is defendant's contention that the court's error in allowing Haney to testify in violation of the sequestration order was prejudicial and constituted an abuse of the trial judge's discretion because all of the state's evidence, except Haney's testimony, was circumstantial.
LSA-C.Cr.P. Art. 764 permits the sequestration of witnesses and a prohibition against their discussing the case "with anyone other than the District Attorney or defense counsel." An order of sequestration is intended to assure that a witness will testify concerning his own knowledge of the case without being influenced by the testimony of prior witnesses and to strengthen the role of cross-examination in developing facts. State v. Stewart, 387 So.2d 1103 (La.1980); State v. Lewis, 367 So.2d 1155 (La.1979). This provision vests discretion in the trial judge to disqualify a witness when a rule of sequestration has been violated. State v. Mullins, 353 So.2d 243 (La.1977). A trial judge's ruling on this issue will not be disturbed on appeal absent a clear showing of an abuse of his discretion. State v. Stewart, supra; State v. Lewis, supra, State v. Mullins, supra.
Although defense counsel cross-examined Haney to determine whether the sequestration order had been violated, no showing was made that the investigator had informed Haney of events and testimony occurring in the courtroom. The investigator was not a witness in the case. Since the purpose of sequestration under LSA-C. Cr.P. Art. 764 is to insure that a witness will testify from his own knowledge of the case without being influenced by the testimony of other witnesses, it does not appear that the purpose of the sequestration order was violated in our case. Accordingly, the trial judge did not abuse his discretion in permitting Haney to testify.
This assignment lacks merit.

MISTRIAL BASED ON HEARSAY TESTIMONY (ASSIGNMENT OF ERROR NO. 5)
In this assignment of error, defendant contends the trial court erred in denying his motion for a mistrial based on prejudicial hearsay testimony by a state witness.
*698 During the direct examination of Haney, the prosecutor asked:
"Q. Did ya'll talk about this?"
Defense counsel immediately objected to any statements made by the defendant to Haney on the ground that defendant had not received notice of any statements despite his previous discovery motion. The State withdrew the question, but later the following testimony took place:
"Q. Did you see him stab him?
A. No sir. I seen him with the knife, but then he came back and told me he think, you know, he cut the dude in the back."
Thereupon, defense counsel objected and moved for mistrial on the ground that no foundation had been laid for the introduction of the inculpatory statement and that the defense had not received notice of the statement under LSA-C.Cr.P. Art. 768.[2]
Assuming that the above statement was hearsay, it was admissible as part of the res gestae. In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime, if the continuous chain of events is evident under the circumstances. LSA-R.S. 15:447, 448; State v. Drew, 360 So.2d 500 (La.1978); State v. Batiste, 318 So.2d 27 (La.1975).
Haney testified that defendant had walked back to him less than three minutes after the stabbing and had told him that he thought he had cut the victim in the back. Haney was a participant in the planned drug purchase and stood only a short distance away from the area where the fight took place. Thus, defendant's utterance to Haney immediately after the crime clearly falls within the res gestae exception to the prohibition against hearsay testimony. Accordingly, we find no error in the trial court's denial of defendant's motion for mistrial based on prejudicial hearsay testimony by a state witness.
We likewise find no merit to defendant's contention based on LSA-C.Cr.P. Art. 768, requiring prior notice of defendant's inculpatory statement. This court has consistently held that notice under this article is not required when the statement sought to be admitted into evidence forms a part of the res gestae. State v. Hennigan, 404 So.2d 222 (La.1981); State v. Lawson, 393 So.2d 1260 (La.1980); State v. Shelton, 377 So.2d 96 (La.1979); State v. Labostrie, 358 So.2d 1243 (La.1978).
This assignment is without merit.

IRRELEVANT TESTIMONY (ASSIGNMENT OF ERROR NO. 6)
Defendant complains by this assignment that the trial court erred in overruling a defense objection to the prosecution's elicitation of irrelevant testimony. This question arose in connection with the introduction into evidence of taped statements made by the defendant.
Defense counsel cross-examined Officer Phares concerning the procedure used in interrogating defendant, in an attempt to show that defendant's entire conversation had not been taped and that the detectives had made threatening statements to him prior to recording his inculpatory statement. When the prosecutor questioned Phares on redirect concerning the normal procedure used in taking a statement from a suspect, defense counsel objected on the ground that the question had no probative value in the case. The trial court overruled the objection, and defense counsel now argues that since Phares had already testified at length as to the procedure used in interrogating *699 the defendant any testimony regarding standard procedures used in taking a statement from a suspect was irrelevant.
LSA-R.S. 15:441 defines "relevant evidence" as:
"... that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
A trial judge's ruling concerning relevancy should not be disturbed absent a showing of a clear abuse of his discretion. State v. Garrison, 400 So.2d 874 (La.1981); State v. Alford, 384 So.2d 761 (La.1980); State v. Echols, 376 So.2d 1244 (La.1979).
The prosecutor's question on redirect examination was an attempt to inform the jury that the officer had used the standard procedure in taking defendant's statement and had not withheld or omitted improper interrogation from the tape. Under the circumstances, the prosecutor's question was relevant to the issue brought out by defense counsel on cross-examination. We find no abuse of the trial court's discretion in this instance.
This assignment lacks merit.

DETAILS OF DEFENDANT'S PRIOR CONVICTIONS (ASSIGNMENT OF ERROR NO. 8)
Defendant, in his testimony, admitted pleading guilty to simple robbery and forgery when asked on direct examination if he had ever been convicted of a crime. On cross-examination, the prosecutor questioned him concerning the details of his prior convictions. Defense counsel's objection to this line of questioning was overruled and the defendant then testified concerning the details of the simple robbery. In this assignment, defendant contends the trial court erred in permitting such questioning since, by admitting his convictions, defendant was already impeached and further inquiry was improper and prejudicial.
In impeaching the credibility of a defense witness, the State may not only establish prior convictions of the witness, but may also cross-examine him about the details of those convictions in order to show the true nature of the offenses. State v. Jackson, 307 So.2d 604 (La.1975). This rule also applies to defendants who testify in their own behalf. State v. Connor, 403 So.2d 678 (La.1981); State v. Brown, 371 So.2d 746 (La.1979); State v. Sykes, 364 So.2d 1293 (La.1978). The trial judge has great discretion in determining the depth and length of the inquiry into the past convictions and his ruling will not be disturbed absent a showing of abuse. State v. Brown, supra.
In the instant case, the nature and scope of the prosecution's questioning concerning the details of defendant's prior convictions were well within allowable limits and we cannot say the trial judge abused his discretion in overruling the defendant's objection.
This assignment is without merit.

EXCESSIVE SENTENCE (ASSIGNMENT OF ERROR NO. 10)
By this assignment of error, defendant complains the trial court gave undue weight to findings contained in a pre-sentence investigation report, failed to consider mitigating factors, and imposed an excessive sentence.
The pre-sentence investigation report indicated that defendant Kimble had demonstrated, by his actions, a flagrant disregard for human life and had been shown leniency by the jury in being convicted of manslaughter. The report recommended that defendant receive the maximum allowable sentence.
Defendant argues that the statements in the pre-sentence investigation report show that the probation officer was attempting to second-guess the jury. The trial judge referred to the pre-sentence report and indicated further that defendant was a second-felony offender, not eligible for probation, and that the instant conviction was *700 defendant's third felony conviction, even though he was technically classified as a second-felony offender.
It is undisputed that defendant had been convicted of simple robbery and of attempt to obtain Preludin by fraud. Based on defendant's past criminal record, and the nature of the crime in this case, we conclude that defense counsel's argument that the sentence is excessive lacks merit.
Finding no reversible error, we affirm the defendant's conviction and sentence.
AFFIRMED.
DIXON, C. J., and CALOGERO, J., concur.
NOTES
[*] Judges James C. Gulotta and Jim Garrison of the Fourth Circuit Court of Appeal, and Judge Bernard J. Bagert of the Criminal District Court for the Parish of Orleans, participated in this decision as associate justices ad hoc, joined by Chief Justice John A. Dixon, Jr. and Associate Justices Pascal F. Calogero, Jr., Walter F. Marcus, Jr. and Fred A. Blanche.
[1] Assignments of error nos. 2, 7, and 9 have not been argued in briefs and are therefore deemed abandoned. State v. Blanton, 325 So.2d 586 (La.1976).
[2] LSA-C.Cr.P. Art. 768 reads as follows:

"Art. 768. Same; use of confession or inculpatory statement; notice to defendant prior to opening statement
If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."