552 So.2d 1036 (1989)
STATE of Louisiana
v.
Robert LILLY.
No. 88 KA 1709.
Court of Appeal of Louisiana, First Circuit.
November 14, 1989.
William Campbell, Jr., New Orleans, for plaintiff-appellee.
James H. Looney, Asst. Public Defender, Covington, for defendant-appellant.
Before COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Robert Lilly was indicted by the Washington Parish Grand Jury for second degree murder, a violation of LSA-R.S. 14:30.1. He was tried by a jury, which returned the responsive verdict of guilty of manslaughter. The trial court imposed a sentence of eighteen years at hard labor, with fifteen years to be served without benefit of probation, parole or suspension of sentence, as provided by LSA-C.Cr.P. art. 893.1. Defendant appealed, urging four assignments of error:
1. The trial court improperly denied defendant's motion for production of a police report used by a state witness during his testimony.
2. The evidence is insufficient.
3. The trial court erred by applying the provisions of LSA-C.Cr.P. art. 893.1.
4. The sentence is excessive.

FACTS
Defendant was charged with the murder of his estranged wife, Debra Lilly. Defendant *1037 and the victim had been separated for approximately ten days at the time of the incident. The victim was killed in the home of Kenneth "Buck" Jones, the man with whom she was then residing.
Kenneth Jones testified that, on the night of the murder, defendant came to his house to speak to the victim. A quarrel ensued, and defendant left. A short time later, Jones and the victim heard noises outside; and the victim called the police, reporting a prowler. Shortly thereafter, she made a second call, reporting that the intruder was attempting to gain entry. As she hung up the telephone and stepped outside the kitchen area, she was hit by several pellets from a shotgun blast emanating from outside the house. Jones related that he returned fire with a rifle, and the person outside again shot into the house with the shotgun. The victim died before medical assistance could be obtained.
Defendant testified on his own behalf. He related that he went to Jones's house with Jones's permission and that he intended only to speak to his wife. He was angered because Jones intervened in the discussion. After they locked him outside, defendant left. He returned a short time later and hit at the door. He and Jones again argued. As he stood outside the door, Jones fired upon him; and, thereafter, defendant returned fire. Defendant claimed that he was unaware that anyone inside the house had been hit at the time he drove off.
Defendant was arrested a few hours later in Mississippi for driving under the influence of alcohol. The arresting officer told him that he was also wanted in Louisiana for murder. He waived extradition and returned to this state to face charges.

DENIAL OF ACCESS TO POLICE REPORT
By assignment of error number one, defendant submits that the trial court erred by refusing to permit him access to a police report used by a state witness to refresh his memory. He claims he was entitled to the report because the witness, Officer Ralph Corkern, used the report on the stand. The trial court denied defendant's motion, finding that the officer's actions resulted from a ruse by defense counsel to obtain access to the report.
Police reports are considered confidential and, generally, the state may not be compelled to produce them for inspection.[1] However, when an officer's testimony at trial is the product of his past recollection recorded, rather than present memory refreshed, the trial court should require production of the report for defense inspection. State v. Franks, 363 So.2d 518 (La. 1978). The same ruling should follow where it is shown that a witness has referred to his report or notes in his possession on the witness stand, even if the notes were presumably used only to refresh his memory while testifying. State v. Franks, supra; State v. Perkins, 310 So.2d 591 (La.1975). Thus, the state is not required to produce police reports of a testifying officer unless: (1) the officer has physical possession of the report on the stand and testified from it; or (2) the officer testified exclusively from his past recollection recorded even if the officer does not have physical possession of the report on the stand; and (3) it is established that there is an inconsistency between the officer's testimony at trial and his report. State v. Latin, 412 So.2d 1357 (La.1982).
The report to which defendant sought access concerned statements made by Melissa Friloux, Jones's neighbor, to Officer Corkern concerning the time at which the incident occurred. Ms. Friloux testified that she heard gunshots "within a minute or two" of 11:30 p.m. During defendant's cross-examination of Officer Corkern, the following exchange occurred:
EXAMINATION BY MR. McKERNAN:
*1038 Q. Now, on the night of this incident, did you talk to various interested parties who may have been present? For instance, did you talk to a Melissa Frilot (sic)?
A. Yes, sir.
Q. Did you obtain a statement from her?
A. Yes, sir.
Q. Did she advise you this incident occurred at eleven-thirty?
BY MR. MURRAY: Your Honor, Ms. Frilot (sic) has already testified. I think her testimony is the best evidence.
BY MR. McKERNAN: She's testified to that. I want to know if he was advised by her as part of his investigation.
BY THE COURT: I'm going to let him go ahead.
BY THE WITNESS: What was your question?
EXAMINATION BY MR. McKERNAN:
Q. Did she advise you that the incident had happened at eleven-thirty?
A. About eleven fifty-seven, sir.
Q. She told you?
A. Yes, sir.
Q. She told you at eleven fifty-seven?
A. Yes, sir.
Q. Did you make a report of this incident on that night or shortly afterwards?
A. A report on this?
Q. Yes, sir. You have prepared a report; have you not?
A. Yes, sir.
Q. Have you reviewed that report now to help you refresh your memory?
A. Yes, sir.
Q. May I see that report, please?
BY MR. MURRAY: Your Honor, I object to that. I'm afraid we have to argue this outside the presence.
BY THE COURT: Would you take the jury out.
(AT THIS TIME, THE JURY WAS RETIRED.)
BY MR. MURRAY: Your Honor, obviously, my objection initially was to hearsay. I have no objection if he wants to ask him what he told her. Really, Ms. Frilot (sic) has already testified. The entire thing was a ruse to get the supplemental report, which he is not entitled to.
BY THE COURT: I see that now.
BY MR. McKERNAN: It is not a ruse. I don't appreciate the Court saying that. She testified at eleven-thirty. I have a right to know what she had told him. I hadn't even thought about the report until he picked out the report and started reviewing it. When he did that, I have the absolute right to it, Your Honor.
BY THE COURT: Mr. McKernan, I don't care what you appreciate and do not appreciate the Court saying. I was letting you go on with a line of questioning as a courtesy. I should have sustained Mr. Murray's original objection, which I am going to sustain now.
In his brief to this court, defendant claims that "[i]n the instant case the officer was asked a question to which he did not recall the answer until he looked at his report." However, Officer Corkern testified without hesitation that Ms. Friloux told him the incident occurred "about" 11:57 p.m. There is no indication in the record that the witness referred to the report or intended to use that report in any way until he was specifically questioned about it by defense counsel. Defense counsel cannot properly engage in a "fishing expedition" on a collateral matter. See State v. Jolla, 337 So.2d 197, 199 (La.1976). This assignment of error has no merit.

SUFFICIENCY OF THE EVIDENCE
By assignment of error number two, defendant submits that the evidence is not sufficient to sustain the verdict. He claims that the state failed to prove that the shooting was not an act of self-defense.
When a defendant claims self-defense in a homicide case, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. *1039 State v. Garcia, 483 So.2d 953 (La.1986). However, "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." LSA-R.S. 14:21. A homicide is justifiable only "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger...." LSA-R.S. 14:20(1).
Herein, defendant readily concedes that the victim died from injuries inflicted by a shot from his weapon. Defendant claims only that he was fired upon first and the victim was killed by accident when he returned fire. The evidence presented by the state and confirmed by defendant's own testimony at trial establishes that: (1) defendant sought out the victim, insisting on speaking to her despite her apparent disinclination to speak further with him; and (2) defendant returned to Jones's home armed with a shotgun, intending either to obtain entry into the house or force the parties inside to converse with him. In addition, the state presented evidence that the lock on the door to Jones's home was destroyed from the outside. Finally, Melissa Friloux testified that she heard the shooting as it occurred and that the shotgun blast preceded the shots she heard from the other weapon.
For appellate purposes, the standard of review of a claim of self-defense is whether or not a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Matthews, 464 So.2d 298 (La.1985). Any rational trier of fact could find that the evidence presented by the state established that defendant was the aggressor in the conflict and, thus, not entitled to claim self-defense. Further, even if it could be found that defendant was not the aggressor, any rational trier of fact could find, beyond a reasonable doubt, that defendant did not act in self-defense. Moreover, when a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls; and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984). The jury obviously discredited defendant's trial testimony that he fired into the house after he was first fired upon, and no other hypothesis of innocence has been presented. Accordingly, this assignment of error has no merit.

APPLICATION OF LSA-C.CR.P. ART. 893.1
By assignment of error number three, defendant urges that the trial court erred by applying the provisions of LSA-C. Cr.P. art. 893.1 in imposing sentence. Defendant claims that he was not notified before trial that the state intended to invoke the provisions of this article; and, thus, the court erred in specifying that fifteen years of his sentence was to be served without benefit of probation, parole or suspension of sentence.
LSA-C.Cr.P. art. 893.3 sets forth minimum mandatory sentences that a court is required to impose for certain offenses that were committed by an armed offender. After finding that a firearm was used in the commission of a felony (where suspension of sentence is not otherwise prohibited), the court is required to impose a sentence of at least five years at hard labor. Neither imposition nor execution of the sentence can be suspended, and the offender is not eligible for either probation or parole.
At the sentencing hearing, the court imposed a sentence of eighteen years at hard labor. After the state reminded the court that it had filed a motion requesting invocation of the provisions of art. 893.1, the court ordered that fifteen years of the sentence be served without benefit of probation or parole. Defendant objected on the grounds that he had not received notice of the state's intent to invoke the provisions *1040 of art. 893.1. The state responded by advising the court that the motion had been filed the day after the verdict of manslaughter had been returned, and a copy of the motion had been served upon the attorney who represented defendant at trial. The state further noted that it was unable to file the notice before trial because defendant was charged with an offense that carried a mandatory sentence of life imprisonment, without benefit of probation, parole, or suspension of sentence; and, therefore, the state was unaware until after the responsive verdict was returned that such a petition would be required.
In State v. Jackson, 480 So.2d 263, 271 (La.1985), the Louisiana Supreme Court considered the applicability of art. 893.1. Therein, the court held as follows:
An accused is entitled to know in advance of trial by receipt of a written notice from the prosecutor that the state intends to invoke art. 893.1 by calling on the trial judge prior to sentencing to make a finding that a firearm was used in the commission of the charged felony. [footnote omitted.] Absent such pre-trial notice, the penalty enhancement provision contained in art. 893.1 shall not be applied. [Emphasis added.]
Thereafter, in State v. Allen, 496 So.2d 301, 304 (La.1986), the Court further noted as follows:
When the applicability of a sentencing enhancement statute (Article 893.1 in this case) depends upon a finding, based on evidence presented at trial, that a firearm was used in the commission of a crime and the defendant's sentence may be substantially increased as a result of the application of the statute, the due process clauses of the federal and state constitutions mandate that the defendant be notified, in advance of the trial at which evidence of this factual issue is to be presented, of the importance of rebutting such evidence (use of a firearm), even though the evidence is not necessary to prove an essential element of the charged crime, [footnote omitted] The serious consequences of the finding based on this evidence (even if the judge makes the finding in post-trial proceedings) trigger the requirements of notice at a meaningful time and of an opportunity to be heard on the issue. [Emphasis added.]
Thus, we find no merit to the state's contention that the notice to the trial court was filed at the first available opportunity after the verdict of manslaughter was returned. Defendant's due process rights required that the state file notice with the trial court of its intention to seek enhanced penalties in the event of conviction before the trial was had, since it was at the trial that proof that defendant was armed was to be established. Accordingly, we find that the provisions of LSA-C.Cr.P. art. 893.1 are inapplicable herein. The sentence imposed is vacated, and this matter is remanded to the trial court for resentencing in accordance with the views expressed herein. Therefore, we do not consider the merits of defendant's claim that the sentence is excessive.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.
SHORTESS, J., concurs in result but disagrees with the majority's treatment of assignment # 1.
NOTES
[1] An exception to this rule is the initial report of the investigating officers, which is a public record subject to discovery. LSA-R.S. 44:3 A(4). Defendant does not claim that he was entitled to this document as the initial report.